**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DO NO HARM,
11357 Nuckols Rd., Pmb 115
Glen Allen, VA 23059

*Plaintiff*,

v.

HEALTH AFFAIRS,
1220 19th Street, NW, Suite 800
Washington, DC 20036

and

PROJECT HOPE,
1220 19th Street, NW, Suite 800
Washington, DC 20036

*Defendants*.

Case No.

## VERIFIED COMPLAINT

Do No Harm brings this verified complaint for declaratory relief, injunctive relief, and nominal damages against Health Affairs and Project Hope and alleges as follows:

## INTRODUCTION

1. Racial discrimination is fundamentally "'immoral,'" "'inherently wrong,'" and "'destructive of democratic society.'" *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 521 (1989) (Scalia, J., concurring in judgment). "'[E]very time the government places citizens on racial registers and makes race relevant to the provision of burdens or benefits, it demeans us all.'" *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 316 (2013) (Thomas, J., concurring).

2. Racial classifications demean us all even when done by private entities. Hence why, through Title VI of the Civil Rights Act and Section 1557 of the Affordable Care Act, Congress extended the promise of equal protection and race neutrality to private entities that accept federal funds. "'Simple justice requires that public funds, to which all taxpayers of all races contribute, not be

spent in any fashion which encourages, entrenches, subsidizes, or results in racial discrimination.'" *Barbour v. Wash. Metro. Area Transit Auth.*, 374 F.3d 1161, 1170 (D.C. Cir. 2004).

3. Defendants, Health Affairs and Project Hope, are running a race-segregated health journal fellowship—Health Equity Fellowship for Trainees—that excludes white applicants.

4. To be eligible for the Fellowship, applicants must identify as American/Alaskan Indian, African American, Asian American, Native Hawaiian and other Pacific Islander, or Hispanic/Latino. The Fellowship offers numerous benefits, including mentorship with published researchers and journal staff, opportunity to publish research in a highly respected peer-reviewed journal, and introduction to a powerful professional network. According to Defendants, however, white applicants need not apply.

5. Defendants' no-whites-allowed Fellowship is illegal. Because Defendants receive millions of dollars in federal funds every year and are primarily engaged in health services, all their operations—including the Fellowship—are covered by the federal prohibitions on racial discrimination in Title VI and Section 1557. All racial classifications, much less outright segregation, are subject to strict scrutiny under federal law, which Defendants cannot come close to satisfying.

6. Defendants' race-segregated Fellowship is also illegal under D.C. law, which prohibits professional associations from engaging in racial discrimination, or publishing racially discriminatory advertisements, in connection with any training programs. *See* D.C. Code §2-2101.02(10), §2-1402.11(a)(4)(A), (B).

**PARTIES**

7. Plaintiff, Do No Harm, is a Virginia-based, nationwide membership organization consisting of a diverse group of physicians, healthcare professionals, medical students, patients, and policymakers who want to protect healthcare from radical, divisive, and discriminatory ideologies,

including the recent rise in explicit racial discrimination in graduate and postgraduate medical programs.

8. Do No Harm accomplishes its mission through education about and advocacy against the divisive and discriminatory ideas being embedded within medical education, training, research, practice, and policy. It has, among other things, filed litigation against the Biden administration for introducing discriminatory "equity" criteria into Medicare and filed OCR complaints against medical schools that create fellowships and scholarships that exclude whites and Asian-Americans.

9. Do No Harm has at least one member who is being harmed by Defendants' race-segregated Fellowship and who is ready and able to apply for the 2023 class if Defendants stop discriminating against white applicants.

10. Defendant Health Affairs is a well-known healthcare journal published by Project Hope, with its principal place of business and headquarters located in Washington, D.C.

11. Health Affairs, together with Project Hope, launched and is running the race-segregated Health Equity Fellowship for Trainees.

12. Defendant Project Hope is a 501(c)(3) non-profit that principally provides direct healthcare services, supplies, medicines, equipment, and training for healthcare professionals, and engages in healthcare policy discussions.

13. Project Hope is running the race-segregated Health Equity Fellowship for Trainees along with Health Affairs.

14. Project Hope has its principal place of business and headquarters located in Washington, D.C.

15. Project Hope receives millions of federal funds every year from agencies like the U.S. Department of Health and Human Services, U.S. Agency for International Development, U.S. Department of State, and others.

## JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction under 28 U.S.C. §1331, §1343, and §1367.

17. Venue is proper under 28 U.S.C. §1391 because Defendants' principal place of business and headquarters are in Washington, D.C., and a substantial part of the events or omissions giving rise to the claims occurred in Washington, D.C.

## FACTUAL ALLEGATIONS

### A. Project Hope provides health services throughout the United States and receives millions of dollars in federal funds.

18. Project Hope provides direct healthcare services throughout the United States and the world; provides healthcare supplies, equipment, and training to healthcare professionals; and engages in healthcare policy discussions.

19. Project Hope's primary activities are in healthcare. Proj. Hope, *About Us, What We Do* (last visited Sep. 6, 2022), bit.ly/3cvETFd.

20. Project Hope "provid[es] direct health care services." *Id.* Especially within the United States, Project Hope maintains a significant presence and provides direct medical and healthcare services.

21. Project Hope also publishes Health Affairs, a highly prestigious, peer-reviewed healthcare journal that "explores health policy issues of current concern in domestic and international spheres." Health Affairs, *About Health Affairs* (last visited Sep. 6, 2022), bit.ly/3wIuzAq.

22. Health Affairs claims that its "mission is to serve as a high-level, non-partisan forum to promote analysis and discussion on improving health and healthcare, and to address such issues as cost, quality, and access." *Id.*

23. Health Affairs boasts that its publications have been cited by "national media" as well as "U.S. administration officials, U.S. lawmakers, … ministry of health leaders around the globe," and "U.S. Supreme Court Chief Justice Roberts." *Id.*

24. Health Affairs is a selective medical journal: with 1,700 submissions annually, Health Affairs only accepts approximately 10% of the total submissions. *Id.* Publication in Health Affairs is prestigious, as the journal is considered "the bible of health policy." Pearlstein, *Consolidation: Health Care's Empty Promise*, Wash. Post (Jan. 12, 2005), wapo.st/3pWy6Y7.

25. Project Hope has received millions of dollars in federal assistance over many years, in addition to its 501(c)(3) tax-exempt status. In 2022 alone, it received over $8.7 million from the U.S. Department of Health and Human Services. *See* Tracking Accountability in Government Grants System (TAGGS), *Project Hope – The People-to-People Health Foundation, Inc.*, Dep't of Health & Hum. Servs. (last visited Sep. 6, 2022), bit.ly/3Az39hu.

26. Similarly, Project Hope has received over $9.6 million from the U.S. Agency for International Development. *Recipient Profile – Project Hope*, USASpending.gov (last visited Sep. 6, 2022), bit.ly/3RuQF1e.

27. According to Project Hope's 2021 Annual Report, it received funds from HHS, USAID, and the U.S. Department of State last year. Proj. Hope, *2021 Annual Report* 21 (last visited Sep. 6, 2022), bit.ly/3cwCCJZ.

28. And according to its 2020 audited financial statement, Project Hope received approximately $26.1 million in federal funds two years ago. Proj. Hope, *Financial Report* 7 (Dec. 31, 2020), bit.ly/3KSxoFb.

**B. Project Hope and Health Affairs launch and oversee the Health Equity Fellowship for Trainees that excludes white applicants.**

29. Defendants run the highly selective Health Equity Fellowship for Trainees, which was first launched in 2021. *See* Health Affairs, *Health Equity Fellowship for Trainees* (last visited Sep. 6, 2022), bit.ly/3pQUjqv; Proj. Hope, *Health Equity Fellowship for Trainees – Health Affairs* (last visited Sep. 6, 2022), bit.ly/3TnPrXn. The Fellowship is an ongoing program, and it selects a new group of fellows each year.

30. The Fellowship is part of Health Affairs' national initiative "to advance racial equity in health policy and health services scholarly publishing." Health Affairs, *Health Equity Fellowship for Trainees*.

31. The Fellowship's stated objective is to "increase" the "quantity of racial equity-related research published in the journal authored by members of racial and ethnic groups that have historically been underrepresented in scholarly publishing." *Id.*

32. The Fellowship provides numerous benefits for the selected fellows: one-on-one mentorship from published researchers and Health Affairs editorial staff "to increase the likelihood that the fellow's submitted manuscript will be accepted for publication in *Health Affairs* or another journal"; "[p]ublication of at least one *Health Affairs Forefront* post relating to their subject area and/or experience with the fellowship"; one year of free membership to *Health Affairs Insider* (worth $180); an opportunity to serve as a brand advocate for Health Affairs; and expanded professional networks and engagements with other fellows and peer health services researchers. *Id.*

33. The Fellowship consists of a four-hour commitment from the fellows to participate in monthly meetings with mentors, seminars, and other sponsored events. *Id.*

34. Spots for the Fellowship are limited, and Defendants select no more than 10 fellows per year. *Id.*

35. To be eligible to apply, Defendants require that the applicant "[i]dentify as" a member of one of the following racial groups: "American Indian/Alaskan Native"; "African American/Black"; "Asian American, Native Hawaiian and other Pacific Islander"; and "Hispanic/Latino." *Id.*

36. White students and researchers who identify as white are not eligible to apply to the Fellowship. *Id.*

37. Throughout the Fellowship's existence, it appears that no fellow has ever been white.

38. The deadline to apply for the 2023 Fellowship class—which runs from January 2023 to December 2023—is September 19, 2022. *Id.*

**C. Do No Harm's white members are ineligible to apply to the Fellowship solely on account of race.**

39. Do No Harm has at least one member who is currently being harmed by Defendants' race-segregated Fellowship.

40. Member A is a member of Do No Harm.

41. Member A is currently a research fellow at a think tank.

42. Member A received a Ph.D. in 2019 and completed postdoctoral work in 2020 from top public and private universities in the United States with rigorous research and multidisciplinary programs.

43. Member A's past research has addressed regulatory barriers that disproportionately affect and disadvantage racial minorities. Member A's health-policy research has been cited by major national print media outlets.

44. Member A currently has ongoing (and years-long) research projects relating to race-equity issues. Member A has submitted articles to Health Affairs in the past.

45. Member A wishes to pursue research and publish in a journal on topics related to race equity because Member A cares about the issue and because being published in a peer-reviewed journal is an important professional milestone. The Fellowship also offers numerous benefits—like the mentorship with published researchers and journal staff, professional connections, and other opportunities—that Member A wishes to take advantage of.

46. Member A meets all nonracial criteria for applying to the Fellowship. Yet because Member A is white, Member A is ineligible to apply.

47. Member A is ready and able to apply to the Fellowship for the 2023 class and future classes if Defendants stop discriminating against white applicants.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of Title VI of the Civil Rights Act
### 42 U.S.C. §2000d

48. Do No Harm repeats and realleges each of the prior allegations.

49. Title VI provides that no person "shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d.

50. Title VI's protections are "coextensive with the Equal Protection Clause of the Fourteenth Amendment." *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 980 F.3d 157, 185 (1st Cir. 2020).

51. Under Title VI, "the term 'program or activity' and the term 'program' mean *all of the operations* of … [a] private organization": (i) "if assistance is extended to such private organization … as a whole" or (ii) if the private organization "is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation." 42 U.S.C. §2000d-4a(3)(A)(i)-(ii) (emphasis added).

52. Private individuals and entities can sue to enforce Title VI and obtain both injunctive relief and damages. *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

53. Project Hope is principally engaged in the business of providing "education, health care, housing, social services, or parks and recreation."

54. Project Hope also receives federal assistance provided to it as a whole.

55. Project Hope and all its operations—including Health Affairs and the Health Equity Fellowship for Trainees—are covered by Title VI.

56. Defendants are running the race-segregated Fellowship which excludes white applicants, like Do No Harm's Member A, from applying to and participating in the Fellowship.

57. White applicants, like Member A, are and will be "excluded from participation in, be denied the benefits of, or be subjected to discrimination under" the Fellowship solely based on their race. §2000d.

58. Defendants' racial classification (and outright racial segregation) is subject to strict scrutiny, which Defendants cannot satisfy.

59. Defendants cannot show a compelling interest for excluding white applicants from the Fellowship. A "generalized assertion that there has been past discrimination" cannot serve as a compelling interest for present racial segregation. *J.A. Croson Co.*, 488 U.S. at 498. Nor can providing "role models" for minority students. *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 276 (1986). Ensuring "programming diversity" is also insufficient. *Lutheran Church-Mo. Synod v. FCC*, 141 F.3d 344, 350 (D.C. Cir. 1998).

60. The complete exclusion of white applicants from the Fellowship is also not narrowly tailored. There is no evidence that Defendants ever "considered methods other than explicit racial classification to achieve their stated goals." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 734 (2007). Nor can Defendants show "the most exact connection between justification and classification." *Wygant*, 476 U.S. at 280.

**COUNT II**
**Violation of Section 1557 of the Affordable Care Act**
**42 U.S.C. §18116(a)**

61. Do No Harm repeats and realleges each of its prior allegations.

62. Section 1557 of the Affordable Care Act states that "[a]n individual shall not, on the ground prohibited under title VI … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, *any health program or activity, any part of which is receiving Federal financial assistance*, including credits, subsidies, or contracts of insurance." 42 U.S.C. §18116(a) (emphasis added).

63. "The phrase 'health program or activity' in section 1557 plainly includes all the operations of a business principally engaged in providing healthcare." *T.S. ex rel. T.M.S.*, 43 F.4th 737, 743 (7th Cir. 2022).

64. Consistent with Section 1557's plain text, HHS regulations define "health program or activity" to "encompas[s] all of the operations of entities principally engaged in the business of providing healthcare that receive Federal financial assistance," 45 C.F.R. §92.3(b), including those "provided by [HHS]," §92.3(a)(1).

65. Private entities and individuals can sue to enforce Section 1557 and obtain both injunctive relief and damages. §18116(a).

66. Project Hope holds itself out as being, and is, principally engaged in providing healthcare.

67. Project Hope also receives federal funds from HHS and other federal agencies.

68. Project Hope's entire operations—including Health Affairs and the Health Equity Fellowship for Trainees—are covered by Section 1557.

69. White applicants, like Do Ho Harm's Member A, are and will be "excluded from participation in, be denied the benefits of, or be subjected to discrimination under" the Fellowship solely based on their race. §18116(a).

70. In addition, because Defendants are violating Title VI, they are also violating Section 1557.

**COUNT III**
**Violation of D.C. Human Rights Law**
**D.C. Code §2-1402.11(a)(4)(A)**

71. Do No Harm repeats and realleges each of the prior allegations.

72. Under D.C. law, it is an "unlawful discriminatory practice …, wholly or partially for a discriminatory reason based upon the actual or perceived rac[e] … of any individual," D.C. Code §2-

1402.11(a), for an employer "[t]o discriminate against any individual in admission to … any program established to provide apprenticeship or other training or retraining," §2-1402.11(a)(4)(A).

73. An "employer"—under D.C. law—includes "any professional association." §2-1401.02(10).

74. D.C. law allows "[a]ny person … aggrieved by an unlawful discriminatory practice" to "have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate." §2-1403.16(a).

75. The Fellowship run by Health Affairs constitutes a training program organized by a professional association. *See* Health Affairs, *Health Equity Fellowship for Trainees* (Fellowship consists of monthly meetings, seminars, and events and mentoring the fellows to publish articles).

76. Defendants' categorical exclusion of white applicants from the Fellowship is a discriminatory act. §2-1402.11(a)(4)(A).

77. Defendants' exclusion of white applicants was "wholly or partially for a discriminatory reason based upon the actual or perceived rac[e] … of any individual"—namely, because they are white. §2-1402.11(a).

**COUNT IV**
**Violation of D.C. Human Rights Law**
**D.C. Code §2-1402.11(a)(4)(B)**

78. Do No Harm repeats and realleges each of the prior allegations.

79. D.C. law also makes it unlawful to "print or publish … any notice or advertisement, or use any publication form" that "unlawfully indicat[es] any preference, limitation, specification, or distinction, based on the race, color, …, [and] national origin." §2-1402.11(a)(4)(B).

80. The D.C. Human Rights Law is "to be generously construed" consistent with the fact that it is "a broad remedial statute" and "a 'powerful, flexible and far-reaching prohibition against

discrimination of many kinds.'" *Geo. Wash. Univ. v. D.C. Bd. of Adjustment*, 831 A.2d 921, 939 (D.C. 2003).

81. An "employer"—under D.C. law—includes "any professional association." §2-1401.02(10).

82. D.C. law prohibits professional associations from "unlawfully indicating any preference, limitation, specification, or distinction" for their training programs "based on the race, color, …, [and] national origin." §2-1402.11(a)(4)(B).

83. The Fellowship constitutes a training program run by a professional association under D.C. law.

84. Defendants posted racially exclusionary Fellowship eligibility criteria on their websites, stating that white applicants are not eligible to apply to the Fellowship.

**PRAYER FOR RELIEF**

Do No Harm respectfully requests that this Court enter judgment in its favor and against Defendants and provide the following relief:

A. A declaratory judgment that Defendants' Health Equity Fellowship for Trainees violates Title VI, Section 1557 of the Affordable Care Act, and the D.C. Human Rights Law;

B. A temporary restraining order and preliminary injunction barring Defendants from selecting the 2023 class of the Fellowship until further order of the Court; barring Defendants from enforcing their racially discriminatory eligibility criteria for the Health Equity Fellowship for Trainees; and extending the application deadline from September 19, 2022 to December 31, 2022, or until the Court deems proper;

C. A permanent injunction barring Defendants from maintaining racially discriminatory eligibility criteria for the Fellowship and ordering Defendants to formulate new eligibility criteria that are race neutral;

D. Nominal damages of $1;

E. Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws; and

F. All other relief that Do No Harm is entitled to, as the Court deems just and proper.

Dated: September 6, 2022

Respectfully submitted,

*/s/ Cameron T. Norris*
Thomas R. McCarthy (DC Bar No. 489651)
Cameron T. Norris (VA Bar No. 91624)
Frank H. Chang (DC Bar No. 1686578)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
frank@consovoymccarthy.com

**VERIFICATION**

I, Kristina Rasmussen, declare as follows:

1. I am over the age of 18, of sound mind, and otherwise competent to sign this verification.

2. I am the Executive Director of Do No Harm.

3. I have reviewed this verified complaint.

4. For the allegations within my personal knowledge, I believe them all to be true.

5. For the allegations not within my personal knowledge, I believe them to be all true based on my review of the cited policies and documents and based on my conversations with Do No Harm's members, including Member A.

6. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 5, 2022

Kristina Rasmussen
Executive Director of Do No Harm