**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DO NO HARM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:22-cv-02670-RDM** |
| **HEALTH AFFAIRS and PROJECT HOPE,** | |
| **Defendants.** | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

MORGAN, LEWIS & BOCKIUS LLP
Jocelyn R. Cuttino (DC Bar No. 998367)
Stephanie Schuster (DC Bar No. 1011924)
1111 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: 202.739.3000
Facsimile: 202.739.3001
jocelyn.cuttino@morganlewis.com
stephanie.schuster@morganlewis.com

*Attorneys for Defendants Project HOPE and
Health Affairs*

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   SUMMARY OF ALLEGATIONS ....................................................................... 2

III.  LEGAL STANDARD ........................................................................................... 4

   A.   Federal Rule of Civil Procedure 12(b)(1) ................................................ 4

   B.   Federal Rule of Civil Procedure 12(b)(6) ................................................ 4

IV.   ARGUMENT ........................................................................................................ 5

   A.   Plaintiff Lacks Standing to Sue for Itself or on Behalf of Member A .................. 5

   B.   Plaintiff Has Not Asserted and Cannot Assert Viable Claims Under
        Section 1981, Title VI, Section 1557, or the DCHRA ......................... 10

   C.   Plaintiff's Section 1981 Claim Also Fails Because HEFT Does Not Create
        A Contractual Relationship Between Defendants and Fellows ......................... 13

   D.   Plaintiff Should Not Be Afforded Leave to Amend the Complaint.................... 16

V.    CONCLUSION.................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. Obama for America*,
2017 WL 6523154 (N.D. Ill. Sept. 26, 2017) ........................................................16

*Adam v. Obama for America*,
210 F. Supp. 3d 979 (N.D. Ill. 2016) ..............................................................13, 15

*Allen v. Wright*,
468 U.S. 737 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v.
Static Control Components, Inc.*, 572 U.S. 118 (2014) ....................................6, 7, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................4, 11

*Assoc. General Contractors of Am. v. City of Jacksonville*,
508 U.S. 656 (1993)....................................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................4

*Carter-Frost v. District of Columbia*,
305 F. Supp. 60 (D.D.C. 2018) ................................................................................11

*City of Harper Woods Employees' Retirement Sys. v. Olver*,
577 F.Supp.2d 124 (D.D.C. 2008) .............................................................................4

*Claybrooks v. Am. Broad. Cos.*,
898 F. Supp. 2d 986 (M.D. Tenn. 2012) ..................................................................12

*Copeland v. Arklay LLC*,
273 F. Supp. 3d 69 (D.D.C. 2017) ...........................................................................11

*Equal Rights Ctr. v. Abercrombie & Fitch Co.*,
767 F. Supp. 2d 510 (D. Md. 2010) .........................................................................10

*Equal Rights Ctr. v. Hilton Hotels Corp.*,
No. 07-1528, 2009 WL 6067336 (D.D.C. Mar. 25, 2009) .....................................6, 7

*Equal Rights Ctr. v. Post Props., Inc.*,
633 F.3d 1136 (D.C. Cir. 2011) .................................................................................5

*Erby v. United States*,
424 F. Supp. 2d 180 (D.D.C. 2006) ...........................................................................4

*Food & Water Watch, Inc. v. Vilsack*,
　808 F.3d 905 (D.C. Cir. 2015) ........................................................................5

*Free Speech Coalition, Inc. v. Attorney General*,
　974 F.3d 408 (3rd Cir. 2020) .........................................................................10

*Gregory v. Dillard's, Inc.*,
　565 F.3d 464 (8th Cir. 2009) .........................................................................11

*Hagemann v. Molinari*,
　14 F. Supp. 2d 277 (E.D.N.Y. 1998) .............................................................14

*Heckler v. Mathews*,
　465 U.S. 728 (1984) ........................................................................................7

*Hollander v. Sears, Roebuck & Co.*,
　450 F. Supp. 496 (D. Conn. 1978) ...............................................11, 13, 14, 15

*Jolevare v. Alpha Kappa Alpha Sorority, Inc.*,
　521 F. Supp. 2d 1 (D.D.C. 2007) ..................................................................11

*Jones v. U.S. Dept. of Justice*,
　111 F. Supp. 3d 25 (D.D.C. 2015) .................................................................16

*Kowal v. MCI Commc'ns Corp.*,
　16 F.3d 1271 (D.C. Cir. 1994) ........................................................................4

*Lauture v. Int'l Business Machines Corp.*,
　216 F.3d 258 (2d Cir. 2000) ..........................................................................13

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555 (1992) ........................................................................................7

*Marvelli v. Chaps Community Health Center*,
　193 F. Supp. 2d 636 (E.D.N.Y. 2002) ...........................................................14

*McDermott v. Ampersand Publ'g, LLC*,
　593 F.3d 950 (9th Cir. 2010) .........................................................................12

*Moose Lodge No. 107 v. Irvis*,
　407 U.S. 163 (1972) ........................................................................................7

*Mykonos v. United States*,
　59 F. Supp. 3d 100 (D.D.C. 2014) ..................................................................4

*NAACP v. Alabama ex rel Patterson*,
　357 U.S. 449 (1958) ......................................................................................12

*Nat'l Family Planning & Reproductive Health Ass'n, Inc. v. Gonzales*,
    468 F.3d 86 (D.C. Cir. 2006) ...................................................................................9

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ...............................................................................................4

*Robinson v. Detroit News, Inc.*,
    211 F. Supp. 2d 101 (D.D.C. 2002) .....................................................................11

*Shea v. Kerry*,
    796 F.3d 42 (D.C. Cir. 2015) ..............................................................................8, 9

*Slovinec v. Georgetown University*,
    268 F. Supp. 3d 55 (D.D.C. 2017) .........................................................................3

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ...........................................................................................6

*Stafford v. George Washington Univ.*,
    2019 WL 2373332 (D.D.C. 2019) .......................................................................11

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) ...............................................................................................6

*Toth v. Wells Fargo Bank, N.A.*,
    82 F. Supp. 3d 373 (D.D.C. 2015) .........................................................................4

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*,
    517 U.S. 544 (1996) ...............................................................................................6

*United Steelworkers of America v. Weber*,
    443 U.S. 193 (1979) .............................................................................................12

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..........................................................................................8, 10

**Statutes**

42 U.S.C. § 1981(a) ......................................................................................... *passim*

42 U.S.C. § 2000d...............................................................................................1, 10

42 U.S.C. § 18116 ...............................................................................................1, 10

D.C. Code § 2-1402.11 ..................................................................................... *passim*

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Defendants Project HOPE and *Health Affairs* submit the following Memorandum of Law in support of their Motion to Dismiss Plaintiff Do No Harm's Amended Verified Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.   INTRODUCTION

Plaintiff's Amended Complaint should be dismissed because Plaintiff lacks standing and cannot state a claim for discrimination. Plaintiff challenges allegedly discriminatory criterion for *Health Affairs*' Health Equity Fellowship for Trainees (HEFT), but the anonymous member on whose behalf Plaintiff sues, "Member A," has never applied for HEFT, has never been prevented from applying for HEFT, has never been rejected from HEFT, has never been deemed ineligible for the program, has never suffered an injury attributable to Defendants, and is not under threat of suffering any such injury. Because Plaintiff does not allege that Member A (or any other person interested in or who has applied to HEFT) has been personally subject to discrimination, Plaintiff lacks a concrete and particularized injury that would give Plaintiff standing to sue. Further, there is simply nothing for the Court to enjoin, as the application period has closed, the challenged online posting for the fellowship no longer exists, the posting and application for the 2024 fellowship cycle have not yet been created, and there are no allegations that Defendants have ever rejected anyone from HEFT based on race.

For the same reasons, Plaintiff has not alleged and cannot allege sufficient facts to state viable claims under Section 1981 of the Civil Rights Act of 1866, Title VI of the Civil Rights Act of 1964, Section 1557 of the Affordable Care Act (ACA), or the DC Human Rights Act (DCHRA). These statutes prohibit discrimination based on race, and Member A has not been discriminated against in connection with HEFT. Nor does Plaintiff allege that HEFT's eligibility criteria have

1

been used to reject an applicant. Indeed, the HEFT application allows applicants to select "prefer not to respond" rather than identify their race. Other than a single, conclusory allegation that none of the prior fellows "appears to be white alone," Plaintiff does not allege that selecting "white" or "prefer not to respond" has rendered an applicant ineligible for the program.

Opportunity is not a zero-sum game. An effort to increase underrepresented voices in health services scholarly publishing is not an effort to suppress any other voices. And providing individuals a chance to compete on equal footing to be published does not put anyone else on unequal footing to be published. Equally, *Health Affairs'* First Amendment right to increase the quality and quantity of race-equity research in the journal authored by underrepresented voices does not equate to unlawful discrimination. Plaintiff's effort to paint a mentorship program as discriminatory—when there are no allegations that it has ever rejected an applicant based on race— should be rejected, and Plaintiff's claims and request for injunctive relief should be dismissed in their entirety.

## II.   <u>SUMMARY OF ALLEGATIONS</u>

*Health Affairs* is a peer-reviewed journal published by Project HOPE that explores health policy issues of current concern in domestic and international spheres. (Am. Compl. ¶ 22.) In 2021, *Health Affairs* launched HEFT, which is part of *Health Affairs'* initiative to advance racial equity in health policy and health services scholarly publishing. (Am. Compl. ¶ 31.) One objective of HEFT is to increase the quality and quantity of *Health Affairs* content that is related to racial-equity research and is authored by members of racial and ethnic groups that have historically been underrepresented in scholarly publishing. (Am. Compl. ¶ 34.) The fellowship provides mentorship and other benefits, but it does not guarantee publication in *Health Affairs* (Am. Compl. ¶ 35), and

there is no financial compensation associated with the fellowship. (Exhibit A.)[1] The fellowship's online posting, which is no longer posted, previously stated that applicants should identify as members of underrepresented racial groups. (Am. Compl. ¶ 44; Exhibit A.) However, applicants are not required to identify their race during the application process and may select "prefer not to respond" on the application. (Exhibit B.) The online posting for the fellowship's next cycle has not yet been created or made available.

Plaintiff alleges that it has one member who is being harmed by HEFT. (Am. Compl. ¶ 53.) "Member A" received a Ph.D. in 2019 and has already had the opportunity to participate in a research fellowship. (Am. Compl. ¶¶ 55-56.) Plaintiff claims that Member A's past research has "addressed regulatory barriers that disproportionately affect and disadvantage racial minorities." (Am. Compl. ¶ 57.) This research has allegedly been cited by "major national print media outlets." (Am. Compl. ¶ 59.) Plaintiff further alleges that Member A has ongoing research projects relating to race-equity issues. (Am. Compl. ¶ 60.) Plaintiff says Member A is "ready and able to apply" to HEFT (Am. Compl. ¶ 65), but Member A ostensibly has never applied to or been rejected from the program. Despite that Member A has already had the opportunity to participate in research fellowships and has already enjoyed the reward of being cited in major national print media outlets, Plaintiff takes issue with an effort to provide similar opportunities to others who have not had them. Plaintiff does not allege that anyone has ever been rejected from HEFT based on race.

---

[1] The online posting and application for HEFT are incorporated into the Amended Complaint by reference, and therefore may be considered at the motion to dismiss stage. *Slovinec v. Georgetown Univ.*, 268 F. Supp. 3d 55, 59 (D.D.C. 2017) ("In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity.").

### III.   LEGAL STANDARD

#### A.   Federal Rule of Civil Procedure 12(b)(1)

"[A] court must dismiss a case when it lacks subject matter jurisdiction." *Mykonos v. United States*, 59 F. Supp. 3d 100, 103 (D.D.C. 2014). "The plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). Although the Court must treat the plaintiff's factual allegations as true, because Rule 12(b)(1) concerns the court's ability to hear a claim, the court must scrutinize the plaintiff's allegations more closely than it would in considering a motion under Rule 12(b)(6). *Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373, 376 (D.D.C. 2015). Motions to dismiss for lack of standing challenge the Court's subject matter jurisdiction and should be reviewed under Rule 12(b)(1). *City of Harper Woods Employees' Retirement Sys. v. Olver*, 577 F.Supp.2d 124, 128 (D.D.C. 2008).

#### B.   Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) is designed to "streamline litigation by dispensing with needless discovery and factfinding" through the early dismissal of meritless claims. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Although this Court must accept as true all well-pleaded factual allegations, the Court need not and should not accept inferences that "are unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). A court must dismiss a complaint that fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## IV.   ARGUMENT

Based on the facts alleged in the Amended Complaint, Plaintiff lacks standing to sue on its own behalf or on behalf of Member A. In addition, Plaintiff has not asserted, and cannot assert, viable claims under Section 1981, Title VI, Section 1557 of the ACA, or the DCHRA because Plaintiff does not allege that Defendants have ever rejected Member A or anyone else from HEFT based on race.[2] Accordingly, and as set forth more fully below, Plaintiff's Complaint should be dismissed.

### A.   Plaintiff Lacks Standing to Sue for Itself or on Behalf of Member A

#### 1.   Plaintiff Lacks Organizational Standing

Article III standing requires an injury-in-fact, causation, and redressability. To have organizational standing, an entity must meet Article III's requirements in its own right. *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011). For an organization, injury-in-fact requires more than a setback to its interests or goals. *Id.* An organization has standing only when the challenged conduct has "perceptibly impaired the organization's … daily operations." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015).

Plaintiff does purport to allege standing to sue in its own right. Nor could Plaintiff's allegations support organizational standing here. Plaintiff alleges that it is an organization that seeks to "protect healthcare from radical, divisive, and discriminatory ideologies" (Compl. ¶ 7), but it does not allege that it has been harmed by HEFT or that HEFT has impaired its operations.

---

[2] As set forth in prior pleadings in this case, Defendants assert that Title VI, Section 1557 of the ACA, and the DCHRA do not apply to HEFT for various reasons—namely, that Project HOPE does not receive federal funding as a whole; *Health Affairs* and HEFT do not receive federal funding; neither Project HOPE nor *Health Affairs* provides direct healthcare services; Defendants do not employ HEFT fellows; and HEFT is not a professional association. For purposes of this motion only, however, Defendants accept Plaintiff's allegations to the contrary as true.

Rather, Plaintiff alleges that it has one member who is being harmed by HEFT. (Am. Compl. ¶ 9.) Accordingly, Plaintiff has not alleged facts that would establish organizational standing.

### 2.    Plaintiff Lacks Associational Standing

Plaintiff can establish associational standing only if (1) Member A has standing in his or her own right; (2) the interests Plaintiff seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996). On the first element, an organization must allege "who the[] members are" on whose behalf it purports to assert claims and sufficient facts to show those members have standing. *See Equal Rights Ctr. v. Hilton Hotels Corp.*, No. 07-1528, 2009 WL 6067336, at *3 (D.D.C. Mar. 25, 2009). Plaintiff's standing fails on at least the first and third elements.

### a.    Member A Lacks Standing

Member A's standing fails for several reasons. As an initial matter, Member A's anonymity dooms Plaintiff's standing because to establish associational standing, Plaintiff must name the individuals who were harmed by the challenged program. *See Summers v. Earth Island Institute*, 555 U.S. 488, 498 (2009). The only exception is where *all* the members of the organization are affected by the challenged activity (*id.*)—an allegation Plaintiff does not (because it cannot) make here.

Second, Member A has not suffered a concrete or particularized injury. An injury-in-fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). An injury resulting from alleged discrimination is concrete and particularized only when suffered by "persons who are *personally denied* equal treatment." *Allen v. Wright*, 468 U.S. 737, 755 (1984) (emphasis added), *abrogated*

*on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *accord Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984). The Supreme Court has consistently denied standing to plaintiffs who "were not personally subject to the challenged discrimination." *Allen*, 468 U.S. at 755 (collecting cases); *see, e.g.*, *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166–67 (1972) (plaintiff lacked standing to challenge a racially discriminatory membership policy because he never applied for membership and thus had not been personally exposed to the policy); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) ("[T]he injury-in-fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured.").

Plaintiff alleges that Member A "would *like to* apply" to HEFT, but not that Member A *has* applied or that Defendants have done anything to prevent Member A from applying,[3] deemed Member A ineligible for the fellowship, or rejected Member A's application. Having never applied to or been rejected from HEFT, Plaintiff cannot establish or plausibly allege that Member A has suffered an injury-in-fact.

Third, Plaintiff makes the conclusory and self-serving allegation that Member A is "able and ready to apply," but Plaintiff has not alleged sufficient facts to support this conclusion, and it is "simply too vague to establish that [the unnamed member] would have standing to sue in their own right." *Hilton Hotels*, 2009 WL 6067336, at *5. For example, Plaintiff has not alleged facts

---

[3] To the extent Plaintiff asserts that Member A has been prevented from applying to HEFT, Plaintiff has known since at least September 9, 2022, prior to the September 19 application deadline, that Member A was welcome to apply to the fellowship, and Defendants also made Plaintiff aware before the deadline that prior fellows have identified as white or selected "prefer not to disclose" on their application. Further, on October 27, Defendants agreed to reopen the HEFT application window for three days to allow Member A to apply for consideration for the 2023 fellowship class (including noting that no one on the selection committee was aware of Member A's identity, and that the initial review of applications was not due until November 1). (Dkt. 18.)

to show that Member A meets the requirement of HEFT to be "engaged in health services research that advances racial health equity among historically marginalized populations."[4] (*See* Exhibit A.) While in some circumstances an injury-in-fact can be the "inability to compete on equal footing," *Assoc. General Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993), that standard naturally presumes that the plaintiff otherwise has the ability to compete on equal footing, i.e., that but for the allegedly discriminatory criterion, he or she meets the requirements of the challenged program.[5] While Plaintiff does not have to show that Member A would ultimately have been *selected* for HEFT had he or she applied, it must at least show that Member A is *otherwise eligible and qualified to be considered* and, notwithstanding his or her eligibility, was *precluded from applying*. Based on the allegations in the Complaint, and Member A's anonymity, Plaintiff cannot make that showing.

In *Shea v. Kerry*, 796 F.3d 42, 50 (D.C. Cir. 2015), an employment discrimination case, the Court stated that it would not inquire into a foreign service officer's qualifications for a higher-level job to assess standing because the injury was the denial of an equal opportunity to compete for a mid-level position and not the denial of the job itself. The foreign service officer had already been accepted into the Foreign Service in an entry-level position and allegedly would have been eligible to apply to a mid-level position but for discriminatory criteria. It is axiomatic that the

---

[4] In affidavits filed in support of Plaintiff's Motion for a Preliminary Injunction (Dkt. 2), Member A described his or her own allegations but failed to allege that he or she is participating in research that would *advance* racial health equity.

[5] Even in *Northeastern* and many of the cases on which it relied, the plaintiffs had applied to or bid for programs with set asides for disadvantaged or minority groups. 508 U.S. at 664-66. The Court held that *Warth v. Seldin*, 422 U.S. 490 (1975) was distinguishable because in *Warth*, the plaintiff "did not allege that 'any member had applied…'". And the Court based its ruling on the assumption that the organization's "members regularly bid on construction contracts" and would have bid on the contracts set aside for minority-owned business. *Id.* at 668-69. Here, the facts are distinguishable from *Northeastern* and are more akin to those alleged in *Warth* because Plaintiff does not allege that any of its members have applied to HEFT.

officer was at least qualified to apply, regardless of whether he was the most qualified for the job in question. Conversely, it is doubtful that someone in a completely different field with no qualifications for the role would have had standing, because that person would not have been eligible for the "opportunity to compete." *Shea* should not be read to suggest that Plaintiff does not have to show that Member A is minimally qualified to apply for HEFT. Regardless of whether Member A's qualifications would have warranted his or her selection, Member A would at least have to focus on the relevant subject matter to have the opportunity to compete for the fellowship. Otherwise, anyone would have standing regardless of whether they even focused on health services research.

Fourth, Plaintiff cannot establish causation and redressability because Defendants have not caused Member A any harm and there is not even a theoretical harm this Court could remedy. Member A's alleged injury is the result of his or her own choice not to apply to HEFT, and it is therefore self-inflicted rather than being caused by any decisions of Defendants. A self-inflicted, unrealized injury is not a concrete and particularized injury that confers standing. *See Nat'l Family Planning & Reproductive Health Ass'n, Inc. v. Gonzales*, 468 F.3d 86, 831 (D.C. Cir. 2006) ("self-inflicted harm doesn't satisfy the basic requirements for standing" because it is neither a "cognizable" injury nor "fairly traceable to the defendant's challenged conduct"); *Allen*, 468 U.S. at 758-59 (finding no causation and redressability because there were too many "links in the chain of causation"). Further, lacking an injury or an allegation that he or she will be injured in the next fellowship application cycle or that HEFT has ever injured anyone, and given that the HEFT application period has closed, there is nothing for the Court to redress.

### b.   Member A's Participation Is Unavoidable

Plaintiff cannot possibly show that Member A has been or will be excluded from the fellowship *solely* based on race if Member A cannot prove—with "detailed records or evidence

necessary to show harm" and not conclusory allegations—that he or she otherwise meets the requirements. *See Free Speech Coalition, Inc. v. Attorney General*, 974 F.3d 408 (3rd Cir. 2020). "[B]oth the fact and extent of injury would require individualized proof" from individual members. *Warth v. Seldin*, 422 U.S. at 515–16; *see also Equal Rights Ctr. v. Abercrombie & Fitch Co.*, 767 F. Supp. 2d 510, 521 (D. Md. 2010).

Because Member A's participation would be necessary, and Member A lacks standing to sue, Plaintiff lacks associational standing to sue on Member A's behalf.

### B.     Plaintiff Has Not Asserted and Cannot Assert Viable Claims Under Section 1981, Title VI, Section 1557, or the DCHRA

Even if Plaintiff had standing, Plaintiff fails to state a claim. Member A has never experienced discrimination in connection with HEFT because he or she has not applied to or been rejected from the fellowship. Title VI and Section 1557 provide that no person shall be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity (or health program or activity) receiving Federal financial assistance. 42 U.S.C. § 2000d; 42 U.S.C. § 18116. Section 1981 prohibits discrimination in the making or enforcement of contracts. 42 U.S.C. § 1981(a). Likewise, the DCHRA makes it unlawful for an employer to discriminate based on an individual's actual or perceived race. D.C. Code § 2-1402.11. Even assuming that Title VI, Section 1557, and the DCHRA cover HEFT (which Defendants dispute), Plaintiff has not stated viable claims under any of them or under Section 1981 because Plaintiff does not allege that any of its members have been excluded from participation in, denied the benefits of, or subjected to discrimination based on actual or perceived race because they were not selected as fellows.

To establish a Section 1981, Title VI, or Section 1557 claim, a plaintiff must allege that (1) he suffered some sufficiently adverse action, including interference with the creation of a

contract, and (2) the adverse action was taken because of his race. *Stafford v. George Washington Univ.*, 2019 WL 2373332, *8 (D.D.C. 2019); *Copeland v. Arklay LLC*, 273 F. Supp. 3d 69, 74 (D.D.C. 2017); *see also Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 n.6 (8th Cir. 2009) (rejecting the notion that defendant "may be liable under § 1981 based on a hypothetical composite plaintiff even if it did not unlawfully interfere with the right of any individual to make or enforce a contract."). To establish a DCHRA claim, a plaintiff must show he "was subject to an adverse action motivated by race discrimination." *Carter-Frost v. District of Columbia*, 305 F. Supp. 60, 68 (D.D.C. 2018); *see also Stafford*, 2019 WL 2373332, at *7 ("[I]t remains [plaintiff's] burden to anchor his DCHRA claim in some discriminatory adverse action committed by the Defendants."). The absence of an adverse action motivated by race is fatal to Plaintiff's discrimination claims because Member A "cannot claim that he was excluded from a group he did not seek to join." *Hollander v. Sears, Roebuck & Co.*, 450 F. Supp. 496, 504 (D. Conn. 1978).

Plaintiff's DCHRA claim also fails because Defendants are neither an employer with respect to HEFT nor a professional association, and HEFT is not a training program. While the Court must accept Plaintiff's factual allegations regarding Defendants' federal funding and healthcare work as true for purposes of a motion to dismiss, the Court does not have to accept allegations that are implausible on their face. *See Iqbal*, 556 U.S. at 663-64. Plaintiff's allegations regarding application of the DCHRA are not plausible based on the plain meaning of "professional association" and "training program," and because the DCHRA governs employers and employment decisions. *See Jolevare v. Alpha Kappa Alpha Sorority, Inc.*, 521 F. Supp. 2d 1, 7 (D.D.C. 2007) ("[E]xisting legal authority is clear that '[o]nly an 'employer' may be held liable for violations of … the DCHRA."); *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 109 (D.D.C. 2002) ("As a general matter, a prima facie case of discriminatory failure to train …

consists of the following elements: (1) the plaintiff is a member of a protected class; (2) the **employer** provided training to its **employees**; (3) the plaintiff was eligible for training; and (4) the plaintiff was denied training given to other similarly situated **employees** who were not members of the protected group.") (emphasis added). Indeed, the section on which Plaintiff relies is titled "**Employment**." D.C. Code § 2-1402.11.

Finally, as Plaintiff alleges, HEFT is part of an effort to increase the quality and quantity of racial-equity research authored by scholars who have been historically underrepresented in *Health Affairs*. As Defendants have argued in this case, this effort is protected by the First Amendment. *See, e.g.*, *NAACP v. Alabama ex rel Patterson*, 357 U.S. 449, 460 (1958); *McDermott v. Ampersand Publ'g, LLC*, 593 F.3d 950, 962 (9th Cir. 2010); *Claybrooks v. Am. Broad. Cos.*, 898 F. Supp. 2d 986, 993 (M.D. Tenn. 2012). HEFT does not guarantee publication in the journal for its participants or for members of any particular racial or ethnic group. As such, it does not unlawfully discriminate—it does not create a bar to white authors submitting to the journal, and it does not require that white authors be rejected or excluded from the journal. Rather, it is a mentorship opportunity that does not put anyone who does not participate on unequal footing or impair anyone's ability to compete. As the Supreme Court has held in the Title VII context, anti-discrimination statutes should not be interpreted to prohibit private organizations from taking effective steps to eliminate racial imbalances, which is the goal these statutes were designed to achieve. *See United Steelworkers of America v. Weber*, 443 U.S. 193, 202-04 (1979).

Simply put, Plaintiff has not alleged that the HEFT criterion it challenges has ever been used to unlawfully discriminate, and it therefore has failed to allege facts sufficient to state a claim under Section 1981, Title VI, Section 1557, or the DCHRA.

C.      **Plaintiff's Section 1981 Claim Also Fails Because HEFT Does Not Create A
        Contractual Relationship Between Defendants and Fellows**

HEFT does not create a contractual relationship with fellows and therefore cannot form the

basis of a Section 1981 claim. A "contract" under Section 1981 is "a promise or a set of promises

for the breach of which the law gives a remedy, or the performance of which the law in some way

recognizes a duty." *Lauture v. Int'l Business Machines Corp.*, 216 F.3d 258, 261 (2d Cir. 2000)

(quoting Restatement (Second) of Contracts § 1 (1979)). "[N]ot all agreements are contracts," and

"[t]he formation of a contract" is not simply a mere "agreement … of mutual assent," but is a

special kind of agreement consisting of a "bargain…to exchange promises or to exchange a

promise for a performance or to exchange performances." *Adam v. Obama for America*, 210 F.

Supp. 3d 979, 985 (N.D. Ill. 2016) (quoting Restatement (Second) of Contracts §§ 3, 17 (1981)).

Indeed, "there is no refusal to make a contract where one party offers the other no consideration."

*Id.* at 262.

Participation in HEFT offers no financial compensation, guarantee of employment, or

promise of eventual publication in *Health Affairs* to fellows, and fellows do not promise to perform

services for Defendants in exchange for any form of compensation. The fellows' agreement to

participate in workshops, publish a blog, and work on their manuscripts is solely for their own

benefit. *Health Affairs* offers the fellowship with no guarantee that it will ever benefit from a

fellow's participation—fellows do not promise, and are under no obligation, to submit a

manuscript to *Health Affairs* for publication. Considering the lack of financial consideration,

promise of performance, and guaranteed benefits, HEFT is analogous to an internship or volunteer

program, which courts agree is not contractual. *See, e.g.*, *Hollander*, 450 F. Supp. at 504 (holding

that summer program for recruiting minority applicants was not contract under Section 1981);

*Adam*, 210 F. Supp. 3d at 985-86 (holding that intern failed to allege a bargained for exchange that

would plausibly establish a contractual relationship under Section 1981); *Marvelli v. Chaps Community Health Center*, 193 F. Supp. 2d 636, 659 (E.D.N.Y. 2002) (holding that interns could not state Section 1981 claim because they received no salary and no benefits and "the absence of either direct or indirect economic remuneration or the promise thereof [was] undisputed"); *Hagemann v. Molinari*, 14 F. Supp. 2d 277, 286 (E.D.N.Y. 1998) (unpaid volunteer "was not a party to any contract with the" defendant).

In *Hollander*, the court considered whether a summer program meant to help recruit minority applicants to a management trainee program should be construed as falling within the ambit of Section 1981's right to make and enforce contracts. 450 F. Supp. at 504. The Sears program provided minority students with an opportunity to learn about the retailing business, assistance and counsel from a Sears' recruiter, and guidance by store management through the practical and theoretical phases of the management trainee program. *Id.* at 504-05. The summer program did not guarantee entry into the management trainee program. *Id.* The Court held that "[t]he arrangement offered by Sears for the recruitment of trainee applicants from minority groups, although it may have many indicia of an employment contract is, in substance, realistically different." *Id.* The program was not a contract for services because "the opportunity denied to plaintiff by reason of his race was not in the strictest sense an employment opportunity, but rather an opportunity to receive special orientation in the retailing business while drawing a token salary." *Id.* at 505.[6]

---

[6] The *Hollander* court also held that the management trainee program itself could not form the basis of a Section 1981 claim because the plaintiff was not excluded from a job as a management trainee, the participants were not given priority placement into a job, and there was no evidence that other routes to a management position were blocked. 210 F. Supp. 3d at 503-04.

In addition, in *Adam*, the plaintiff alleged that she formed a contract with Obama for America (OFA) by performing services as an intern in exchange for access to the internship itself (and use of a laptop, which the Court rejected as consideration). 210 F. Supp. 3d at 985-86. The court held that Adam failed to allege that she exchanged consideration with OFA, or that OFA was "*induced* to offer Adam an internship position by some valuable skill or characteristic Adam possessed that she would have used to benefit OFA through her willingness to work." *Id.* at 986. The Court found that OFA "did not give up anything in exchange for Adam's performance, and Adam cannot be said to have 'exchanged' her performance with OFA in return for the internship opportunity." *Id.* "Since OFA cannot be said to have 'exchanged' the opportunity to work as an intern for Adam's work performance, 'the internship itself' is not consideration and cannot form the basis of a contract." *Id.*

HEFT is not a contract for the same reasons that the summer program in *Hollander* and the internship in *Adam* were not contracts: HEFT is an unpaid mentorship program. It is meant to help fellows ultimately achieve publication, but it does not guarantee them publication or even require them to submit a manuscript to *Health Affairs* for publication. As in *Hollander*, exclusion from HEFT does not adversely affect anyone's opportunity to be published in *Health Affairs*. And like OFA, Defendants do not give up anything in exchange for a fellow's participation in HEFT—they are not induced to provide fellows with mentorship *because* fellows promise to perform a service for them. Moreover, acceptance into the fellowship does not create any legally enforceable contract rights. If a fellow chooses not to take advantage of the fellowship benefits, Defendants do not have a legally enforceable right to force them to be mentored or attend workshops. Likewise, if *Health Affairs* is for some reason unable to deliver the benefits of the fellowship, fellows do not have

contractual rights to mentorship or workshops. Plaintiff therefore cannot allege that HEFT violates any contractual rights afforded to its members under Section 1981.

### D. Plaintiff Should Not Be Afforded Leave to Amend the Amended Complaint

Plaintiff has already amended its complaint once as a matter of course, and the Amended Complaints demonstrates that any further amendment would be futile. It is undisputed that Member A has never applied to or been rejected from HEFT, which deprives Plaintiff of standing to sue on Member A's behalf and demonstrates that Plaintiff cannot state a claim for discrimination. Any attempt to plead around these invariable facts would be futile and leave to amend should be denied. *See Jones v. U.S. Dept. of Justice*, 111 F. Supp. 3d 25, 33 n.9 (D.D.C. 2015); *Adam v. Obama for America*, 2017 WL 6523154, at *1-2 (N.D. Ill. Sept. 26, 2017) (denying leave to amend because plaintiff could not allege that internship program constituted a contract).

## V. CONCLUSION

The fact that Plaintiff does not allege that Member A has applied to or been rejected from HEFT based on race renders the Complaint subject to dismissal under Rules 12(b)(1) and 12(b)(6). It deprives Plaintiff of standing and precludes Plaintiff from alleging that Member A has been subject to unlawful discrimination. Accordingly, Plaintiff has not established subject matter jurisdiction or asserted viable claims, and the Amended Complaint should be dismissed.

Dated: December 5, 2022

Respectfully submitted,

s/ Jocelyn R. Cuttino

Jocelyn R. Cuttino (DC Bar No. 998367)
Stephanie Schuster (DC Bar No. 1011924)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004
T: 202.739.3000
F: 202.739.3001
jocelyn.cuttino@morganlewis.com
stephanie.schuster@morganlewis.com

*Attorneys for Defendants Project HOPE and Health Affairs*